**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

UNITED STATES OF AMERICA ex rel.
VINCENT WAGNER, and
DANIEL HISSONG, and
DAVID OGLE, and
TRAVIS KOHLER,

Plaintiffs

v.

GLOBAL PLASMA SOLUTIONS, INC., and
NU CALGON WHOLESALER, INC., and
AMERESCO, INC.

Defendants.

Case No. 21-cv-110

**[Filed Under Seal Pursuant to 31 U.S.C. §3729 False Claims Act]**

## COMPLAINT

### Introduction

1. Qui Tam Relators, Vincent Wagner, and Daniel Hissong, and David Ogle, and Travis Kohler, ("Relators") individually, and on behalf of the United States of America, file this Complaint against Global Plasma Solutions, Inc., Nu Calgon Wholesaler, Inc., and Ameresco, Inc. ("Defendants") to recover damages, penalties, and attorneys' fees for violations of the Federal False Claims Act, 31 U.S.C. §3729 et seq.

2. Defendants have knowingly made, or caused to be made, false or fraudulent claims for which Coronavirus Aid, Relief, and Economic Security ("CARES Act") money has been expended to purchase and install needlepoint bipolar ionization (NPBI) devices in state and local public building air handling systems.

3. The CARES Act money has been spent on Defendants' NPBI devices and services that do not and cannot kill or deactivate the airborne virus SARS-Covid-2 (which causes the disease Covid-19) in public buildings, as Defendants claim.

4. State and local governments have spent CARES Act money to install Defendants' NPBI devices in public buildings in reliance on Defendants' false claims that such devices can kill or deactivate airborne SARS-Covid-2 virus (referred to hereinafter simply as "Covid").

5. In connection with the filing of this Complaint, Relators have furnished the United States with substantially all material evidence and original source information in Relators' possession, pursuant to 31 U.S.C. §3730.

**Jurisdiction and Venue**

6. This Court has personal and subject matter jurisdiction over this action under 31 U.S.C. §§3730 and 3732 in that Defendants transact business in this District and Defendants have made false claims in this District.

7. Venue is proper in this District pursuant to 31 U.S.C. §3732(a) and under 28 U.S.C. §1391(c) because Defendants transact business in this District.

**Parties**

8. Relator Vincent Wagner is a citizen and resident of Kansas City, Missouri with original source information regarding the allegations in this Complaint.

9. Relators Daniel Hissong, David Ogle, and Travis Kohler are citizens and residents of Douglas County, Kansas with original source information regarding the allegations in this Complaint.

10. Defendant Global Plasma Solutions, Inc. (GPS) is a North Carolina Corporation with its principal place of business in Charlotte, North Carolina.

11. Defendant Nu Calgon Wholesaler, Inc., (Nu Calgon) is a Missouri corporation with its principal place of business in St. Louis, Missouri.

12. Defendant Ameresco, Inc. (Ameresco) is a Delaware corporation with its principal place of business in Framingham, Massachusetts.

## Facts

### Defendants' Marketing And The CARES Act

13. GPS manufactures, markets and sells NPBI devices that are installed in air handling systems in public buildings.

14. Defendants encourage the use of CARES Act money for installation of the GPS NPBI devices into state and local public buildings to deactivate or kill Covid.

15. For example, GPS has a marketing piece entitled "How to channel the CARES Act into cleaner, safer indoor air" in which state and local governments are encouraged to seek CARES Act funds to install GPS NPBI devices "to lessen the impact of the coronavirus."

16. In this same marketing piece, GPS states that independent laboratory studies show that its NPBI technology "limits the spread of viruses."

17. GPS has partnered with Nu Calgon to market and sell GPS NPBI devices in Missouri under the brand name iWave.

18. Ameresco is a national company, that also markets and sells GPS NPBI devices to public entities for installation in public buildings in Missouri and other states.

19. Defendants market the GPS NPBI as being capable of deactivating or killing airborne pathogens, including Covid, with an alleged 99.4% kill rate for Covid.

**GPS Press Release and Marketing of Independent Covid Test Results**

20. On June 10, 2020, GPS issued a press release, picked up and reported by news sources, regarding ionization test results that allegedly demonstrated 99.4% reduction of Covid within 30 minutes.

21. The GPS press release states that this testing is the first instance in which an air purification company has neutralized Covid.

22. In the press release, GPS Founder and Chief Technology Officer Charles Waddell states: "The testing results we achieved through our proprietary needlepoint bipolar ionization technology clearly demonstrate that Global Plasma Solutions is the gold standard in air purification."

23. The press release goes on to tout the NPBI devices "for any kind of facility from commercial buildings to aircrafts, delivering the cleanest, safest indoor air environment …."

24. Further, the press release states that NPBI works to safely clean indoor air, leveraging an electronic charge to create a high concentration of positive and negative ions.

25. The press release then goes on to explain that the ions generated by the GPS NPBI devices travel through the air, and then reduce the infectivity of the Covid virus.

26. The underlying independent testing that GPS utilized in promoting a 99.4% reduction in airborne Covid in 30 minutes does not support GPS's claims.

27. On June 2, 2020, Innovative Bioanalysis of Cypress California issued a report to GPS regarding its testing of GPS NPBI products.

28. In the June 2, 2020 test report, Innovative Bioanalysis tested the GPS NPBI devices in a control chamber wherein viral cultures of Covid were placed in the test chamber in sealable dishes.

29. In the June 2, 2020 test report, the average ion count within the testing chamber was -27,307cc (plus or minus 10,000 cc).

30. After 30 minutes, the June 2, 2020 test report did show that 99.4% of the Covid was eliminated on the surface of the sealable dish containing the virus, but no airborne samples are reported.

31. Innovative Bionalysis concluded that ionization at the levels used in the test (-27,000 cc) could render 99.4% of Covid viral particles inactivated on a stagnant or static surface after 30 minutes -- airborne Covid is not addressed in the report.

32. Innovative Bionalysis concluded that further studies were needed to determine the efficacy of NPBI in different environments.

33. On August 7, 2020, Innovative Bioanalysis issued a second test report to GPS involving GPS NPBI devices and Covid.

34. This August 7, 2020 report indicates that it was designed to determine the efficacy of GPS NPBI devices against Covid in a larger chamber.

35. Three solid samples of material were inserted into the test container and sprayed with Covid virus.

36. As with the first Innovative Bioanalysis test, the average ion count for this test was about -27,000 ions cc.

37. In this second test, Innovative Bioanalysis reported an average decrease in active Covid virus on the three surfaces at 99.89%.

38. Innovative Bioanalysis also stated that the NPBI device used in the experiment has the ability to deactivate Covid-19 with the ion counts used (about -27,000 cc).

39. The August 2020 Innovative Bioanalysis test report states that additional testing was done that could be provided on request.

40. Innovative Bionalysis will not release the additional testing data without GPS' consent.

41. The June 2, 2020 and August 10, 2020 Innovative Bionalysis test reports only refer to the efficacy of GPS NPBI devices against Covid on surfaces at ion counts of -27,000.

42. Ion counts of -30,000 cc or higher are needed to deactivate Covid in air.

43. Defendants misrepresent the GPS testing data from Innovative Bioanalysis to market GPS NPBI for use in deactivating or killing Covid in the air.

44. GPS states in its marketing materials that when ions from its NPBI devices come into contact with pathogens, such as Covid, the ions disrupt the pathogens' surface proteins and thus render the virus inactive.

45. GPS states in its marketing materials that its NPBI devices have enabled schools and theaters to remain open, despite the Covid pandemic, because the GPS NPBI devices inactivate airborne pathogens such as Covid 19, thus creating a safer environment.

**Airborne Testing**

46. In its testing data, GPS reports "simulation testing" results in which NPBI efficacy testing is performed to measure in-air inactivation of pathogens, such as tuberculosis and MRSA, showing rates of reduction in the viruses from 69% to 96%.

47. GPS reports no "simulation testing" results for its NPBI devices and Covid in its testing data placed alongside simulation testing data for other viruses.

48. Instead, GPS states that Innovative Bioanalysis testing done in August of 2020 and showing 99.8 reduction in Covid is "specialty testing" that "is not a measure of pathogen inactivation in the air."

49. Defendants' marketing indicating that NPBI devices can inactivate or kill Covid in air is thus knowingly false and misleading because GPS underlying testing from Innovative Bionalysis did not reach the threshold level of -30,000 ion cc for killing viruses and the underlying test results reported only discuss surface Covid.

**CARES Act Money Expended For NPBI Devices and Covid**

50. The State of Missouri has received at least $2.4 billion in CARES Act money from the United States Government.

51. The Missouri Department of Corrections has spent at least $814,740 in CARES Act money to install GPS NPBI technology in its facilities to cut Covid-19 infection rates for both inmates and staff.

52. Nu-Calgon sold the Missouri Department of Corrections NPBI technology manufactured by GPS and branded by Nu-Calgon as iWave for installation in the following Western Missouri public facilities:

(a) Algoa Correction Center, Jefferson City;

(b) Booneville Correction Center;

(c) Chillicothe Correction Center;

(d) Cremer Therapeutic Community Center, Fulton;

(e) Crossroads Correction Center, Cameron;

(f) Fulton Reception and Diagnostic Center;

(g) Jefferson City Correctional Center;

(h) Kansas City Reentry Center;

(i) Ozark Correction Center, Fordland;

(j) South Central Correction Center, Licking;

(k) Tipton Correction Center; and

(l) Western Missouri Correction Center, Cameron.

53. Through their marketing materials, GPS and Nu Calgon represented to the Missouri Department of Corrections that the NPBI technology would destroy 99.4% of Covid in air within 30 minutes.

54. The Missouri Department of Corrections relied on these false claims in spending CARES Act money, stating in a December 8, 2020 press release: "The department now has ion generators – air purifying devices that, when installed in air handling systems, destroy 99.4% of COVID-19 within 30 minutes."

55. GPS and Ameresco marketed GPS NPBI devices throughout the United States, including to local governments in Kansas including at least three public buildings in Wyandotte County.

56. Ameresco marketed the GPS NPBI technology to these Kansas entities from its St. Louis, Missouri office.

57. Ameresco reported in its marketing materials that the GPS NPBI technology kills airborne pathogens and has a 99.4% effective kill rate for Covid.

58. Local government in Wyandotte County spent CARES Act money to install the GPS NPBI devices, and Ameresco received a percentage of the CARES Act costs for the GPS NPBI devices and installation.


Case 4:21-cv-00140-BP Document 1 Filed 02/23/21 Page 8 of 11

**NPBI Device Are Ineffective Against Covid**

59. Relators have performed ion sampling and research, including sampling for the GPS NPBI devices installed at the Lawrence Public Library and three public buildings in Wyandotte County in which GPS NPBI devices have been installed.

60. Relators discovered in their research and sampling that the negative ions in the air at the Lawrence Public Library ranged from -709 to -1239 cc.

61. Relators discovered in their research and sampling that the negative ions generated by GPS NPBI devices in building air handling systems have a top range of -3000 cc.

62 The GPS NPBI devices thus do not produce the average ions needed (-27,000 ions) to kill or deactivate Covid on surfaces as demonstrated by Innovative Bioanalysis testing done for GPS.

63. Further, the GPS NPBI devices do not reach the average ion level needed (-30,000 ions cc) to kill or deactivate airborne Covid in traditional HVAC systems used in public buildings.

64. Without wall-mounted boosters, the GPS NPBI devices marketed and sold to be installed in public air handling systems cannot reach the average ion levels needed to deactivate or kill Covid in public buildings.

**COUNT I**
**FALSE CLAIM ACT VIOLATIONS**
**31 U.S.C. §3729**

65. Relators reallege and incorporate the allegations set forth above as though fully set forth herein.

66. Defendants have knowingly made, or caused to be made, false or fraudulent claims for which Coronavirus Aid, Relief, and Economic Security (CARES Act) money has been

expended to purchase and install NPBI devices in state and local public building air handling systems, including public buildings within Missouri's Department of Corrections.

67. Defendants have knowingly made or used, or caused to be made or used, false or fraudulent material claims to state and local governments to encourage them to use CARES Act money to install GPS NPBI devices to reduce or eliminate Covid risk.

68. Defendants have and have had actual knowledge of the falsity of their claims regarding GPS NPBI technology and efficacy with regard to Covid, and/or they acted in deliberate ignorance of the truth or falsity of their claims, and/or they acted in reckless disregard of the truth or falsity of their claims.

69. Defendants' false claims regarding GPS NPBI technology and Covid were material in that they had a natural tendency to influence, or were capable of influencing, or did influence, the spending of CARES Act money on GPS NPBI devices in Missouri and Kansas and throughout the United States.

70. As a direct and proximate result of Defendants' false claims and conduct in violation of 31 U.S.C. §3729, the United States has suffered actual damages, including the total amount paid in CARES Act money for Defendants' actions and the purchase and installation of GPS NPBI technology.

WHEREFORE, Relators, acting on behalf of and in the name of the United States of America, pray that judgment be entered against Defendants, and each of them, for violations of the False Claims Act as follows:

1. In favor of the United States of America against the Defendants and each of them for treble damages to the United States Government from the submission of false claims, and the maximum civil penalties for each violation of the False Claims Act;

2. In favor of the Relators for the maximum amount pursuant to 31 U.S.C. §3739(d) to include reasonable expenses, attorney fees, and costs incurred by the Relators;

3. For all costs of this False Claims Act civil action; and

4. In favor of the Relators, and the United States of America, for further relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to FRCP 38 and this Court's Local Rules, Relators demand a jury trial as to all issues so triable.

Respectfully submitted,

*/s/ Brian J. Madden*
Brian J. Madden MO Bar #40637
Marc K. Erickson MO Bar #45402
WAGSTAFF & CARTMELL, LLP
4740 Grand, Suite 300
Kansas City, MO 64112
Tel. (816) 701-1100
bmadden@wcllp.com
merickson@wcllp.com

and

*/s/ Vincent F. O'Flaherty*
Vincent F. O'Flaherty MO Bar #34693
LAW OFFICES OF VINCENT F. O'FLAHERTY, LLC
3637 Main Street
Kansas City MO 64111
Tel: (816) 931-4800
Fax: (816) 756-2168
voflaherty@voflaw.com

**ATTORNEYS FOR RELATORS**


Case 4:21-cv-00110-BP Document 1 Filed 02/23/21 Page 11 of 11